# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
_____ DIVISION

SAMANTHA M. BANNER
(Enter Above the Name of the Plaintiff in this Action)

VS.

At+t (Ohio Bell) *Also known as*
(Enter above the name of the Defendant in this Action)

3:16 cv 388

If there are additional Defendants, please list them:

Sedgewick Claims CMS

## COMPLAINT

I. Parties to the action:

Plaintiff: Place your name and address on the lines below. The address you give must be the address where the court may contact you and mail documents to you. A telephone number is required.

Samantha M. Banner
Name - Full Name Please - PRINT

109 Mary Avenue
Street Address

Dayton Ohio 45405
City, State and Zip Code

937-334-9776
Telephone Number

If there are additional Plaintiffs in this suit, a separate piece of paper should be attached immediately behind this page with their full names, addresses and telephone numbers. If there are no other Plaintiffs, continue with this form.

Defendant(s):

Place the name and address of each Defendant you listed in the caption on the first page of this Complaint. This form is invalid unless each Defendant appears with full address for proper service.

1. <u>AT+T (AKA Ohio Bell)</u>
   Name - Full Name Please

   <u>208 S. AKARD St. Dallas TX 75202</u>
   Address: Street, City, State and Zip Code

2. <u>Sedgewick Claims CMS</u>
   <u>1100 Ridgeway Loop RD #200 Memphis TN 38120</u>

3. _____

4. _____

5. _____

6. _____

If there are additional Defendants, please list their names and addresses on a separate sheet of paper.

II. Subject Matter Jurisdiction

Check the box or boxes that describes your lawsuit:

☐ Title 28 U.S.C. § 1343(3)
   [A civil rights lawsuit alleging that Defendant(s) acting under color of State law, deprived you of a right secured by federal law or the Constitution.]

☒ Title 28 U.S.C. § 1331
   [A lawsuit "arising under the Constitution, laws, or treaties of the United States."]

☒ Title 28 U.S.C. § 1332(a)(1)
   [A lawsuit between citizens of different states where the matter in controversy exceeds $75,000.]

☐ Title _____ United States Code, Section _____
   [Other federal status giving the court subject matter jurisdiction.]

III. Statement of Claim

1. Plaintiff is a resident of Dayton, Ohio and a former employee of Defendant. Plaintiff exhausted her administrative remedies by timely filing a charge of disability discrimination with the Equal Employment Opportunity Commission. Plaintiff received a Right to Sue let. on or after June 6, 2016 which is attached hereto.

2. Defendant, AT&T Inc., is a Delaware corporation which conducts business the State of Ohio in Dayton, Ohio which is located in Montgomery County, Ohio.

3. Defendant Sedgwick Claims CMS is a Tennessee Corporation which conducts business in the State of Ohio in Dayton, Ohio which is located in Montgomery County, Ohio.

**FACTUAL BACKGROUND**

4. Plaintiff is thirty-two years old.

5. Plaintiff is disabled. She has been diagnosed with Delayed Sleep Phase Wake disorder, and Idiopathic Hypersomnia. Plaintiff's disabilities substantially limit her ability to remember, learn, process large amounts of information, sleep on a set schedule, wake up at a set time and stay awake throughout the day. Plaintiff's disabilities also affect her ability to concentrate on and comprehend written material and instructions.

6. Plaintiff was hired by Defendant on or about July 10th, 2010 as a Customer Retention Specialist/ Sales Agent.

7. Job duties included retaining accounts, offering/selling multiple services. Billing/questions/alterations on multiple types of accounts including; landline telephone service, mobile services, internet services, television, and maintenance plans. The schedule was 10:30am through 7:00pm on weekdays, and 8:30am through 5:00pm on weekends. Scheduling was based on seniority, and unable to be altered.

8. On or about February 5th, 2015, Plaintiff's doctor (Dr. Michael Valle, a neurologist specializing in sleep disorders.) advised the Plaintiff to leave work on short –term disability to complete therapy for her disability, including bright-light therapy, and chronotherapy. Sedgwick Claims requested excessive amounts of medical documentation regarding the Plaintiffs disabilities. Sedgwick Claims later advised the Plaintiff that her disability was not a disability, denying any payments from February through September. A case worker for Sedgwick Claims informed the Plaintiff "Invisible disabilities do not qualify for short term payments, they are too hard to prove. You would've been better off breaking a leg or something."

9. During the months Plaintiff was out for therapy, Defendant, AT&T sent Plaintiff numerous letters stating if she did not return to work, against doctors' orders, by a specified date, she would be terminated. Plaintiff was also advised she could not request a reasonable accommodation until after she returned to work, forcing her to work some period of time without the reasonable accommodation.

10. On or about September 2nd, 2015, Plaintiff was advised by her Doctor she could return to work, only with the accommodation that she not begin work on any day, earlier than 12:00pm. The doctor sent numerous accommodation requests, as well as wrote letters to defendant Sedgwick Claims. Plaintiff was advised by management, Tom Antonelli the attendance manager, that they did not have access to accommodation requests, and could not provide a status regarding the request. During the four months the Plaintiff had returned to work, the accommodation request was never approved.

11. On or about September 2nd 2015, Plaintiff was called into the office of management for Defendant, AT&T, by Jimmy Sergeant, a manager from Chicago flown into Dayton, Ohio for this specific occasion, and was "written-up" for the action of ordering her own service. This act was never forbidden in the previous years of Plaintiff's employment and was encouraged by management. The act of ordering service for ones-self was also permitted for non-disabled employees going forward. The Plaintiff's direct supervisor, Ishmael Musa, agreed that this was common practice in the office.

12. During the month of September, the Plaintiff requested the assistance of a "team-lead" whose name is unknown. A team-lead is a person in a position to assist employees with questions or issues, so that management is not bothered. The team-lead was a new employee at that time, and unknown to the Plaintiff. The Plaintiff was given the instruction, and provided a bank's routing number, and told to use random numbers as an account number, to bypass a payment screen that was "popping-up" erroneously. The team-lead advised the Plaintiff to use this technique to bypass the screen, and that this was triggering the error for a "back-office" to go in and correct the issue. This was commonly how billing system errors were handled previously.

13. On or about January 11th 2016, Plaintiff was again called into management's office, to meet Jimmy Sergeant who had flown in from Chicago for this meeting. Plaintiff was advised that she was under investigation for using false or fraudulent routing/account numbers in the billing system, as directed by the team lead. The Plaintiff felt as though she was being targeted for termination, and did not deny the act, but did not provide the other employee's information for fear of them also being targeted. Directly after the discussion with Jimmy Sergeant, Vicki Allen (the call-center general manager) entered the room, and advised the Plaintiff she was being terminated. Vicki Allen collected the Plaintiffs door key, and identification badge. The plaintiff was then removed from the building, and was not allowed to access her belongings to bring home with her.

14. On or about January 20th, the Plaintiff was contacted by another employee, also a team lead, and also a union steward for Communications Workers of America, Local

4322, Carolyn Baker. Carolyn advised the Plaintiff via text message she needed to speak with the Plaintiff. The Plaintiff advised her that she could not speak to anyone with the company at that time. Carolyn responded "no, it is just union stuff" however; when the Plaintiff answered the call, from Carolyn Baker's personal phone number, Vicki Allen was on the other end of the line. Plaintiff disconnected the call, as she had already been terminated both in person, and by mail and did not feel the need for another call. Due to this, the Plaintiff did not feel comfortable pursuing assistance from the Union, and instead filed a charge of Disability Discrimination with the Ohio Equal Employment Opportunity Commission, of Ohio.

15. Due to the claims leading up to this date, the Plaintiff has suffered several losses. Plaintiff was denied Unemployment Compensation, Assistance from the state, and is being held accountable by the Montgomery Child Support Enforcement Agency for her loss of employment. Plaintiff has been denied any assistance or relief due to her "terminated" status from the Defendant, AT&T Inc.

16. The Plaintiff had numerous awards prior to her diagnoses, and no serious offenses on her record. Plaintiff has reason to believe she was also targeted for FMLA usage retaliation, or Disability retaliation that could play a part in the discrimination.

17. A former employee and union steward, Jamie Vagedez advised the Plaintiff that the Defendant, AT&T and the union, CWA, often trade employees jobs. The Plaintiff has no desire to seek future employment as a way of relief due to the distrust that has been shown to the Plaintiff.

IV. Previous lawsuits:

If you have been a Plaintiff in a lawsuit, for each lawsuit state the case number and caption. (Example, Case Number: 2:08-cv-728 and Caption: John Smith vs. Jane Doe).

| Case Number | Caption | | |
|---|---|---|---|
| N/A | | vs. | |
| | | vs. | |
| | | vs. | |

V. Relief

In this section please state (write) briefly exactly what you want the court to do for you. Make no legal argument, cite no case or statutes.

I do not wish to have a job with Att again, for fear of retaliation.
1. $550,000 for the cost of healthcare and loss of employment, for 5 years.
2. $16,000 for lost short term disability payments.
3. $12,000 for lost unemployment Benefits
4. $9,900 for lost state benefits.
5. Any legal fees this lawsuit

I state under penalty of perjury that the foregoing is true and correct. Executed on this 6th day of September, 2016.

_____
Signature of Plaintiff

-4-

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Samantha M. Banner<br>69 Mary Ave.<br>Apt Floor 1<br>Dayton, OH 45405 | From: Cincinnati Area Office<br>John W. Peck Fed. Bldg<br>550 Main St Room 10-019<br>Cincinnati, OH 45202 |

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 473-2016-00512 | Vicki L. McCoy,<br>Investigator Support Asst | (513) 684-6189 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Melanie L. Breen,
Area Office Director

JUN 0 6 2016
*(Date Mailed)*

Enclosures(s)

cc: Marcia Williams
Sr. Project Manager
AT&T EEO OFFICE
311 S. Akard St.
12th Floor, Suite A5
Dallas, TX 75202